UNITED STATES of America,
Plaintiff-Appellee,

v.

Freeman B. YOUNG et al., Defendants-Appellants.

No. 71–2596.

United States Court of Appeals,
Ninth Circuit.

Aug. 17, 1972.

**1098**

Joseph Taback, Richard A. Stambul, of Gold, Herscher & Taback, Beverly Hills, Cal., for defendants-appellants.

William D. Keller, U. S. Atty., Elgin Edwards, Eric A. Nobles, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before MERRILL and WRIGHT, Circuit Judges, and NIELSEN,* District Judge.

NIELSEN, District Judge:

Appellants Freeman B. Young and Thelma I. Young, husband and wife, and Bilthel's Mailing Service, Inc., a corporation, were indicted on eleven counts of violating 18 U.S.C. § 1461, sending obscene matter through the mails. Each count of the indictment alleged that the defendants knowingly deposited and caused to be deposited for mailing, carriage and delivery by the Post Office, an envelope addressed to a specific individual—in some cases a minor—containing obscene advertisements. A jury returned guilty verdicts as to counts 2, 3 and 7 against the Youngs, and as to counts 3 and 7 against the corporate defendant.

Several issues are raised in this appeal. Appellants argue that the materials as a matter of law were not obscene; that the Government's evidence was insufficient to support conviction; that the indictment, returned without a prior judicial hearing on the question of obscenity, was invalid; that the evidence presented should have been suppressed; that the statute under which they were charged is unconstitutional as applied to them; that the trial judge committed error by giving an improper instruction on aiding and abetting, by failing to respond promptly to the jury's request for clarification, and by repeating to the jury the phrase "lewd, lascivious, filthy and vile," which had been removed from the indictment. We have considered each of these claims and have found them to be without merit.

(1) Obscenity of the Materials

Appellant's argument that the materials in question are not obscene presents us with little difficulty. They are unquestionably and by self-proclamation hard-core pornography. These advertisements consist of pictures and textual material describing in graphic detail every sort of sexual activity which the mind can conjure. Part of the materials upon which Count 3 is based depicts variations on heterosexual intercourse, but for the most part the brochures and flyers show various homosexual relationships and acts of sexual perversion, accompanied by written descriptions employing extremely crude and vulgar language. The positions of the models are exaggerated so as to allow the camera maximum exposure to the genital organs and the activities in which they are engaged. Fellatio, cunnilingus, anal intercourse, sodomy, masturbation, and oral-anal contact are starkly portrayed; nothing is left to the imagination.

The jury in the court below found that as a matter of fact all three of the elements necessary for a determi-

---

* Honorable Leland C. Nielsen, United States District Judge, Southern District of California, sitting by designation.

nation of obscenity—appeal to prurient interest, patent offensiveness in the face of contemporary community standards, lack of redeeming social value[1]—were present in this case. This court's de novo review of the materials convinces us that the jury did not go astray in so finding and that, as a matter of law, they are obscene and not constitutionally protected. Jacobellis v. Ohio, 378 U.S. 184, 187–188, 84 S.Ct. 1676 (1964); Wasserman v. Municipal Court, 449 F.2d 787 (9th Cir. 1971); Miller v. United States, 431 F.2d 655, 658 (9th Cir. 1970).

Appellants, however, urge that the record is insufficient to support such a finding, pointing to the failure of the Government to introduce any independent, affirmative evidence as to the three elements of obscenity. They rely for their position on United States v. Klaw, 350 F.2d 155 (1965), a Second Circuit decision which enunciated the requirement that more than the materials themselves must be presented to a jury before it can properly determine the issue of obscenity.

This precise question was again dealt with by the Second Circuit in United States v. Wild, 422 F.2d 34 (1969), cert. denied 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971). In that case the court stated its belief that expert testimony as to prurient appeal and contemporary community standards was not constitutionally required in every case. Acknowledging that while such testimony might be necessary in situations such as *Klaw*, where the alleged obscenity consisted of stories, drawings and photographs in the sado-masochistic "bondage" genre, the court nevertheless maintained that in cases involving hardcore pornography, the trier of fact needs no expert advice. In *Wild*, the subject materials consisted of two groups of color slides, the first showing in various poses a nude male holding or touching his erect penis, and the second portraytwo nude males in the act of fellatio. It is evident that the materials in *Wild* parallel those in the present case more closely than do those in *Klaw*. Here there can be no possible claim of social value in the materials other than the titillation of the erotic interests of the class at whom they are aimed, and from the nature of the materials there can be no doubt as to what that class is, and what the materials are intended to do. We hold, therefore, that these advertisements, combined with the trial judge's instructions, were sufficient to support a finding of obscenity. Expert testimony in this case could have done no more than restate the obvious and to that extent would have been superfluous.

■ Appellants object to the introduction of the pandering issue into the prosecution of this case. As defined by the Supreme Court in Roth v. United States, 354 U.S. 476, 495–496, 77 S.Ct. 1304 (1957) (Warren, C. J., concurring), pandering is the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of the customers. Their objections are without merit in the instant situation. In a close case, evidence of pandering may be considered in determining whether all the elements of obscenity have been proved. Ginzberg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); United States v. Baranov, 418 F.2d 1051 (9th Cir. 1969). This is not a close case. There can be no doubt that the advertisements mailed by the appellants meet the standards for obscenity, and therefore any evidence of pandering could only have been cumulative. The trial judge's instruction with regard to pandering could have had no effect on the outcome of this case, and therefore, assuming *arguendo* that it contituted error, it was

---

1. This test was first enunciated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and reiterated in succeeding cases. See Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1965).

harmless beyond any doubt. Fed.R. Crim.P. 52(a).

### (2) Prior Adversary Hearing Issue

The appellants attack the validity of their indictments on the ground that they should have been preceded by an adversary hearing on the question of the obscenity of the subject materials. This is a question of considerable controversy as courts have sought to interpret the Supreme Court decisions in A Quantity of Books v. Kansas, 378 U.S. 205, 84 S. Ct. 1723, 12 L.Ed.2d 809 (1964), and Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), in which mass seizures of allegedly obscene materials prior to a judicial determination of obscenity were condemned as constituting a prior restraint on First Amendment rights. The argument is that an arrest, just as much as a mass seizure, likewise constitutes a prior restraint and thus, extending the logic in *Marcus* and *A Quantity of Books,* an adversary proceeding prior to indictment should be necessary.

██ This court has addressed itself to this issue on previous occasions, and has concluded that such an extension of the principle is unnecessary and overbroad, and that the cases do not inhibit the ordinary methods of initiating criminal proceedings in the area of obscenity. Krahm v. Graham, 461 F.2d 703 (9th Cir. 1972); Miller v. United States, 431 F.2d 655 (9th Cir. 1970). See, also, United States v. Wild, 422 F. 2d 34 (2nd Cir. 1969), cert. denied, 402 U.S. 986, 91 S.Ct. 1644 (1971). Since the Supreme Court itself seems to support this view, Milky Way Productions, Inc., v. Leary, 305 F.Supp. 288 (S.D.N. Y. 1969), aff'd, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970), we see no reason to depart from our previous position. We therefore find the indictments valid.

██ On the same basis, appellants also argue that the mass seizure of commercial advertisements from their warehouse constituted a violation of their First and Fourth Amendment rights, since there had been no prior adversary hearing on the issue of obscenity. As in Miller v. United States, 431 F.2d 655 (9th Cir. 1970), this court finds it unnecessary to reach this question because here again none of the materials taken from the warehouse were admitted into evidence against appellants. The exhibits relied upon by the Government in counts 2, 3 and 7 were obtained from witnesses who received them in the mail. The warehouse seizure, then, could have had no conceivable effect on the outcome of this prosecution and is irrelevant for the purposes of this appeal.

██ As to the notion urged upon us by appellants that the alleged illegality of the seizure requires the suppression of all the evidence in this case, counsel has cited to us no authority for such a proposition. This may well be because such a broad extension of the rules of search and seizure is simply not the law, and, without more, this court declines to make it so.

### (3) Constitutional Question

Appellants raise several questions regarding the constitutionality of 18 U.S. C. § 1461 as applied to them. The first point is that the application of the statute to a mailing service business constitutes a prior restraint on First Amendment rights.

██ This argument merits little comment. The constitutionality of § 1461 has been upheld by the Supreme Court on the basis that obscenity is not constitutionally protected expression. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304 (1957); United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971). That the statute may be applied to a mailing service which knowingly places the matter in the mails is no more of a prior restraint than its application to the creators or disseminators of the material who initiate the mailing process.

██ We likewise reject the contention that the statute does not preclude the mailing of advertisements. While we cannot accept the Government's rath-

er curious view that by nature all advertisements are necessarily devoid of literary, artistic or social value, we deem it self-evident that they can be obscene, and as such are covered by the statute which characterizes all obscene matter as nonmailable. Any other conclusions would bring about a virtual end to the regulation of obscenity in the mails, since any item, however vile and obscene, which bore the slightest relation to an advertising brochure could be sent through the mail with impunity. This illogical result could hardly have been intended by Congress, and we find unpersuasive the textual analysis advanced by counsel in support of his view.

 With regard to the alleged nullity of Section 1461 in the face of Griswold v. Connecticut, 381 U.S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 510 (1964), we have only to refer to the statute itself. By its passage of Public Law 91–662, which became effective as of January 9, 1971, Congress amended Section 1461 by deleting all reference to contraception from its provisions, thereby conforming with the spirit of *Griswold* and preserving the entire statute from attack on this ground. Therefore, the argument of appellants based on the invalidity of the contraception provisions and the lack of a severability provision is wholly without merit.

#### (4) Alleged Errors at Trial

Finally, appellants object to certain alleged errors of the trial court. We find that the instruction as to the issue of scienter was a proper one, Rosen v. United States, 161 U.S. 29, 41, 16 S.Ct. 434, 40 L.Ed. 606 (1896), and that the facts and circumstances of this case are sufficient to support the jury's finding of knowledge. See Smith v. California, 361 U.S. 147, 154, 80 S.Ct. 215, 4 L. Ed.2d 205 (1959).

Nor was the court's instruction as to aiding and abetting improper. 18 U.S.C. § 2; Grant v. United States, 291 F.2d 746 (9th Cir. 1961).

The final points raised by appellants in their brief—an alleged failure to respond promptly to the jury's request for clarification, a possible double jeopardy argument, and the use of the words "lewd," "lascivious," "filthy," and "vile" in the trial court's instructions— have been considered by this court and found to be nonmeritorious.

The judgment is affirmed.