OPINION OF THE COURT
Timothy J. Drury, J.
The issue raised by these cases is whether a magistrate may issue search warrants for the seizure of two films for their alleged obscenity based on the affidavits of the police officer who viewed the films. In both cases, the magistrate did not view the films himself, and there was nothing to prevent him from doing so. The magistrate did, however, question the police officer concerning the affidavits that were submitted to him. The court is reviewing its own actions pursuant to People v Romney (77 AD2d 482).
The court issued both search warrants after questioning the officer to get a flavor of the movies, to determine if there was anything else to the movies other than what appeared in the affidavits, and to clear up some ambiguities in the affidavits. In the case of the first movie, the court made some additions to the officer’s affidavit which the officer acknowledged before he signed the affidavit. The application for the first search warrant took 30 to 40 minutes, the application for the second took 20 to 30 minutes. No record was made of the questioning in either case and the questioning was not under oath.
The court mistakenly believed that it could not go to view the film personally because the theater operator *267 would change or stop the film if a Judge attempted to gain admittance as had occurred in a prior case before the court (see People v Bunford, 107 Misc 2d 622). The officer in the instant case never said anything to mislead the court and it is apparent from his affidavits that he had no trouble viewing both films.
The court has permitted itself to be questioned in regard to what transpired when the applications for the search warrants were made and has acknowledged the above facts at a hearing held to controvert the warrant. The officer involved has also testified to these facts. (The same officer was involved in both applications.) The court has also stated that it would have been better to have viewed the films personally than to have relied on the affidavits of the police officer and its own questioning of him.
The United States Supreme Court has left open the question of whether a magistrate must view a film before issuing a warrant for its seizure (Lee Art Theatre v Virginia, 392 US 636). There is, however, Federal authority that “a proper affidavit can convey enough information to a Magistrate to enable him to make a determination of the alleged obscenity of the film sufficient to issue a warrant for its seizure.” (United States v Sherpix, 512 F2d 1361, 1368; see United States v Sherwin, 572 F2d 196, cert den 437 US 909; see, also, United States v Espinoza, 641 F2d 153, cert den 454 US 841.)*
The defendant, however, relies on People v Potwora (48 NY2d 91). In Potwora, the police affidavit indicated that other Judges had actually seen the magazines in question and had made independent determinations of obscenity. The Court of Appeals, in Potwora, said that the issuing magistrate could not in effect take the policeman’s word for it that other Judges had found the magazines obscene. The court held that the issuing magistrate must himself conduct a full and searching inquiry into the facts and stated that this obligation “may not be delegated, in part or in whole, regardless of the qualifications of the person on *268 whom reliance is placed” (People v Potwora, supra, p 95). The defendant reasons that, if a neutral magistrate focusing searchingly on the issue of obscenity, cannot rely upon a policeman’s statement that another Judge had in fact viewed the magazines and found them to be obscene, how can he rely upon the police officer’s depiction of what occurred on the screen when he viewed the films in question.
The court finds that the affidavits submitted to it were akin to the affidavit in United States v Sherpix (supra, pp 1368-1369); that is, they were “a lengthy account of the film, describing each scene in detail and with explicit language, but suggesting no conclusions to be drawn from the description.” The court is aware of the defendant’s contention that People v Potwora (supra) has created a higher standard than that which is operative in the Federal cases cited which approve the use of affidavits in obscenity cases. But the court finds that it is not delegating its power to determine what is or is not obscene when it bases its determination on a sufficiently detailed affidavit of an observer who then is questioned by the court concerning the affidavit before the search warrant is issued. In the instant case, it obviously would have been preferable if the court had viewed the movies and, failing that, conducted the questioning of the police officer under oath and on the record. However, given the affidavits submitted to it and the inquiry made by the court of the officer, the court finds that “[t]his clearly was sufficient to enable the Magistrate to exercise an informed, and independent judgment concerning the existence of probable cause to issue a warrant for seizure of the film.” (United States v Sherpix, supra, p 1369.)
Accordingly, defendants’ motions to suppress the films in question are denied.

 Note — Penal Amusement Corp. v Morse (482 F2d 515) cited by the People does not apply since the affidavits discussed in that case were the basis for an order to show cause and resulting subpoenas duces tecum to produce the films in question at an adversary hearing to determine whether a search warrant would issue.